STATE ex rel. NORTHWESTERN TELEPHONE EXCHANGE COMPANY
v. CITY OF THIEF RIVER FALLS and Others.[1]

December 6, 1907.

Nos. 15,075—(72).[2]

**Telephone—Construction of Resolution.**

On March 20, 1899, the city council of respondent city passed the following resolution: "Resolved, by the city council of the city of Thief River Falls, that the right, privilege, and the authority is hereby granted to the Northwestern Telephone Exchange Company, its successors and assigns, to occupy the streets, alleys, and public grounds within said city for the purpose of placing therein its poles, wires, and fixtures, constituting its telephone and telegraph line within and through said city, provided that the location of said poles and wires and fixtures shall be designated by said city council. Nothing herein contained shall be constituted to give exclusive right in the premises to said company." On August 21, 1899, the council, by resolution, designated certain streets for the construction of the company's long-distance telephone line from the city limits to a point within the city.

*Held,* the resolution of March 20 constituted a grant to install within the city the company's long-distance system only, and did not embrace the power to establish a local telephone exchange.

Alternative writ of mandamus from the district court for Red Lake county upon the petition of the Northwestern Telephone Exchange Company, directing the City of Thief River Falls, its mayor and aldermen, to designate the location of certain streets where relator shall place its poles, wires and fixtures. From an order, Watts, J., overruling its demurrer to the answer of defendants, relator appealed. Affirmed.

The petition for the writ alleged, in addition to what is stated in the opinion, that the installation of the telephone line on the streets named in the resolution of August, 1899, was done by the relator in reliance upon the grants, privileges and franchises conferred on it by the resolution of March, 1899, and that in reliance upon said resolution and of the privileges and grants therein, it had expended

---

[1] Reported in 113 N. W. 1057.        [2] April, 1907, term calendar.

in defendant city more than one thousand dollars and expended more than five thousand dollars in extending its toll lines to defendant city. It further alleged that the resolution of March, 1899, the grants made to it and the expenditures made by it in reliance thereon, constitute a contract between defendant city and the relator by which relator has the continuing right and privilege of renewing and extending its telephone line within the city and of occupying at all times for the purpose of its business any street, alley, or public grounds of the city. It further alleged that in order to comply with the increased demand of its patrons and subscribers outside of said city who desire to communicate over relator's telephone lines with persons residing and doing business in said city, and in order to furnish the citizens of defendant city with better facilities for reaching relator's patrons outside of said city with whom they wish to communicate by telephone, it has become necessary for relator to increase the number of its pole lines in defendant city and to establish an exchange therein, and in so doing to still further exercise the grants and privileges conferred upon it by the resolution of March, 1899, all of which it intends now to do.

The answer alleged, in addition to what is stated in the opinion, that in June, 1906, the petitioner commenced an action in the district court of Red Lake county wherein it set out in its complaint matters alleged in the writ herein and sought to obtain a permanent injunction restraining defendant city and its agents from interfering with petitioner in extending its lines throughout said city, upon the streets designated in relator's petition of June, 1906, to the council. That said action is still pending and undetermined. And in said action defendant city seeks to have the petitioner enjoined from extending its lines beyond the streets designated in the resolution of August, 1899.

*Cobb & Wheelright, E. A. Prendergast, S. Cooke* and *R. J. Montague,* for appellant.

The reservation in relator's grant did not add anything to the powers which the city council already had, nor did it give the arbitrary right to decline a reasonable request for the use of further streets.

Louisville Home Tel. Co. v. Cumberland Tel. & Tel. Co., 111 Fed. 663; Barhite v. Home Tel. Co., 50 App. Div. 25; Inhabitants v. N. Y. & N. J. Tel. Co., 57 N. J. Eq. 123; Northwestern Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140; Wisconsin Tel. Co. v. City of Oshkosh, 62 Wis. 32; Michigan Tel. Co. v. City of Benton Harbor, 121 Mich. 512; State v. City of Sheboygan, 111 Wis. 23; State v. City of Red Lodge, 30 Mont. 338; City of St. Paul v. Freedy, 86 Minn. 350.

Where the grant as to places is general in its terms, this confers a general power upon a telephone company to occupy any street and to extend its system from time to time, subject only to the power of the municipality to prevent a location of poles, wires and fixtures in improper places. Kalamazoo v. Kalamazoo, 124 Mich. 74; People v. Deehan (N. Y.) 47 N. E. 787; City of Duluth v. Duluth Tel. Co., 84 Minn. 486; Abbott v. City of Duluth, 104 Fed. 833; State v. Nebraska Tel. Co., 127 Iowa, 194.

The grant from the defendant city and the relator's acceptance of it, constitute a contract which cannot be impaired. McQuillin, Mun. Corp. §§ 238, 239, 580; Northwestern v. Anderson, 12 N. D. 585; City of Cleveland v. Cleveland City Ry. Co., 194 U. S. 517; Detroit v. Detroit Citizens' Street Ry. Co., 184 U. S. 368.

This action will not abate because of the pendency of the injunction suit. 1 Cyc. 27; 1 Enc. Pl. & Pr. 761; Wilson v. St. Paul, M. & M. Ry. Co., 41 Minn. 56; Mathews v. Hennepin Co. Sav. Bank, 44 Minn. 442; Mayerus v. Hoscheid, 11 Minn. 160 (243); Beyersdorf v. Sump, 39 Minn. 495; Coles v. Yorks, 31 Minn. 213.

(In reply.)   We concede that there is a distinction between a plain grant to use the highways for a single toll line and one to do a general telephone business by means of a local exchange, and that if this grant now under consideration limits this relator to the use and occupation of such streets only as may be necessary for the operation or construction of one single toll line running through said city the foregoing argument necessarily falls. But we cannot concede that the grant should receive such narrow construction. The real question is: Does the original grant give to the company the right generally to use the streets for the purpose of a general telephone

business, or is it limited to the use of such streets for a single line only? The whole inquiry hinges upon the meaning of the words "constituting its telephone and telegraph line." These words constitute a generic term and not a specific one. The words "telephone and telegraph line" are just as comprehensive as the words "telephone plant or system." 8 Words & Phrases, 6899; Southern Bell v. D'Alemberté, 39 Fla. 25; Hackett v. State (Ind.) 11 Am. & Eng. Corp. Cas. 577. Our construction placed upon the words "telegraph and telephone line" is confirmed by the history of the general telephone law of Minnesota and the various rights which this court and the U. S. circuit court for this district have declared to have been acquired under it. Laws 1860, c. 12, § 1; Laws 1881, c. 73 (G. S. 1894, § 2641); Laws 1893, c. 74; Laws 1899, c. 51; R. L. 1905, § 2927. Note that this court in 81 Minn. 140, and 84 Minn. 486, and the U. S. court in 104 Fed. 833, held that the statute in granting the right to use public highways "on the line of their route" conferred the power to establish telephone exchange systems and to extend the same. Chamberlain v. Iowa Tel. Co., 119 Iowa, 619; State v. Nebraska Tel. Co., 127 Iowa, 194; City of Wichita v. Old Colony Trust Co., 132 Fed. 641. The court will take judicial notice of the fact that for the public to get the best results from long distance telephone service, with the least inconvenience, it is necessary to have a local exchange connected with the long distance lines. Significance attaches to the words "within and through said city;" the word "within" means "inside" and the word "through" means "passing through." If it had been the intention of the grant to limit the right of the company to install a toll line with one or more toll booths, the word "through" would have been sufficient; and the two words "within" and "through" mean the telegraph and telephone line passing through said city and also that part of it operated within said city, the grant clearly contemplating the establishment both of toll lines and a local system. There is no intimation in the answer that the relator was limited by the grant itself to the use of such streets only as might be necessary for the installation of a long distance line; nor is there any allegation that it was the intention of the city council, by the resolution in question, to so limit the grant of the relator. The relator's

application for the right to extend its system, and for that reason to use additional streets, was not based upon any claim by the city that the original grant was limited only to the installation of a long distance line, but the city council squarely refused to permit any extension because it was about to install a plant of its own. In addition to the reasons given by the city council for refusing to grant relator's request, the answer further alleges that the defendant city is' now adequately supplied with telephone service, and that an additional telephone exchange would be an unnecessary burden upon the inhabitants of the city. Furthermore, the fact that the ordinance itself expressly states that no exclusive grant was to be given to the relator, indicates that it was the purpose of the city to grant something more than the right to install a long distance line. That reservation must have been placed in the grant with a view to having competition in the exchange service.

Counsel intimate that two distinct privileges, the one to operate a toll line and the other an exchange, might have been conferred by the grant, and that the right to operate the exchange has been lost, either by non-user or by non-acceptance. A general right was given to use the streets, alleys and public grounds of the city for the erection of telephone constructions to be used in the operation of telephone lines, and thus far a part of the streets only have been taken. No conditions as to time or otherwise were imposed by the resolution. The grants conferred have never been revoked, nor has any attempt ever been made to forfeit them.

In Northwestern Tel. Exch. Co. v. City of St. Charles, 154 Fed. 386, the questions involved were these: Did the complainant have a vested right, because of the general telephone law of 1881, and the acts and expenditures done and made by it in reliance thereon, to enter into any village or city in the state of Minnesota and to occupy its streets for its telephone constructions without the consent of such village? Further, did the legislature of Minnesota confer upon municipalities the power to arbitrarily exclude from their streets interstate carriers of messages by telephone and thereby prevent the free flow of interstate commerce? There was not a single question presented in that case that we find in the case at bar. No right what-

ever was asserted or claimed by the complainant on account of any grant conferred by the city, but it relied exclusively upon the general telephone law of the state as the same existed prior to the amendment of 1893. The St. Charles case does not control, or even have any bearing in any way, shape or manner, upon the case at bar.

*Wilhelm Michelet* and *Harlan P. Roberts,* for respondents.

We call attention to the fact that there is a very well defined and well understood difference between what is known as a Long Distance Telephone Line and a Telephone Exchange System. This is a difference which has been recognized by the courts and is a difference which is a matter of common knowledge. A city is frequently willing to grant to a telephone company the right to establish a long distance telephone line through the city, when it might not be willing to grant the privilege to the same company to go upon its streets and establish a general local exchange. We contend that the right to build a long distance telephone line, may exist without any right to build and operate a telephone exchange system. Northwestern Tel. Exch. Co. v. City of St. Charles, 154 Fed. 386; City of Toledo v. Western Union Tel. Co., 107 Fed. 10.

A franchise is always strictly construed against the grantee. Abbott, Mun. Corp. 2112, § 902; Joyce, Elec. Law, § 163; Home Tel. Co. v. City of New Brunswick, 62 N. J. L. 172.

Clearly, there was never any acceptance of any right that might have been included in the original resolution to erect a telephone exchange. The company did accept the privilege granted to them, of erecting and maintaining a long distance telephone line, but if they had any right under the original resolution to put in a local exchange system, their failure to act upon that right or in any manner to accept it for a period of seven years forfeited or lost any such right or privilege.

LEWIS, J.

Relator appealed from the order of the trial court overruling its demurrer to the answer of respondents to the alternative writ. The petition for the writ set out that appellant was incorporated under the provisions of title 1, c. 34, G. S. 1894, and that it had installed

and put in operation throughout the state a complete telephone system, and had maintained the same, with the necessary exchanges, switches, poles, wires, and appliances, for the operation and conducting of the business, and that it had in operation more than twenty exchanges, and furnished telephone service to more than three hundred cities and villages, all of which were connected with each other by long-distance toll lines; that on March 20, 1899, the common council of Thief River Falls duly passed and adopted the following resolution:

> Resolved, by the city council of the city of Thief River Falls, that the right, privilege, and the authority is hereby granted to the Northwestern Telephone Exchange Company, its successors and assigns, to occupy the streets, alleys, and public grounds within said city for the purpose of placing therein its poles, wires, and fixtures, constituting its telephone and telegraph line within and through said city, provided that the location of said poles and wires and fixtures shall be designated by said city council.

The petition·alleged: That after the passage of the resolution and during November, 1899, appellant installed and put in operation in the city of Thief River Falls a telephone line, with the necessary poles, wires, and fixtures, and occupied with the same the following streets: Arnold avenue from Town ditch to First street, north side of First street from Arnold avenue to La Bree avenue, west side La Bree avenue to Third street. On August 21, 1899, the common council expressly designated those streets as the proper places for the placing of the poles, wires, etc. That on June 19, 1906, petitioner presented its petition in writing, reciting that it desired to maintain its then present telephone line in the city, and to use and occupy for that purpose certain other designated streets, alleys, and public grounds, and demanded of the common council that· it so designate the location, or streets, alleys, and grounds, where the petitioner might place its telephone poles, wires, and fixtures in making the proposed extension. That the petition was in all respects declined and refused, on the ground that respondent city was about to install and purchase a telephone system of its own, and for the further reason that

relator had no right upon any of the streets, alleys, or public grounds of the city, except those actually occupied by it.

The answer to the alternative writ admitted the passage of the resolution of March 20, 1899, and alleged that in pursuance of such resolution, on August 21, 1899, the common council passed the following resolution:

> Moved by Alderman John M. Burkee, seconded by P. O. Bergh, that the following named streets be, and are hereby, designated as the route over which the Northwestern Telephone Company is permitted to place its poles and wires; poles to be placed at or about eight feet from the side of the street upon which they are placed: Arnold avenue from Town Ditch to First street, north side of First street from Arnold avenue to La Bree avenue, west side La Bree avenue to Third street.

The answer further alleged that the resolution of August 21 defined and limited the extent of appellant's lines and its rights in the city, and that it had not at any time before the commencement of this proceeding used such line for any other than long-distance business. The answer also states that there was already an adequate and complete telephone exchange in operation in the city, and that there was no necessity or demand for increased facilities in connection with the petitioner's telephone service, and that it would be a burden upon the inhabitants of the city to permit such additional incumbrance on the city streets.

It was claimed upon the argument that the only reason why the city council refused to grant the petition was that the city had already installed another plant, and that the refusal was not based upon the ground that appellant had no legal right so to extend its system by virtue of the resolution of March 20, 1899, and that the trial court decided the demurrer upon that ground. In answer to this suggestion, it is only necessary to say that we are not informed by the record upon what ground the learned trial judge based his decision. The answer admitted that the city was already possessed of adequate telephone facilities, and alleged that there was no necessity for an extension of appellant's system; but the question of the legal right to do so was fairly raised by the pleadings, and consequently we have

presented for decision in this court the single question: Did appellant acquire the right to establish a local telephone system under and by virtue of the resolutions of March 20 and August 21, 1899?

We shall dismiss, without discussion, the effect of the proviso contained in the resolution of March 20, reading: "Provided that the location of said poles and wires and fixtures shall be designated by said city council." The right to supervise the location of the line and poles was reserved, whether the grant was limited to a long-distance telephone line, or whether it embraced the further power to establish a local telephone exchange at any time the company should so elect. This proviso throws no light on the question, except as it may be considered in connection with the subsequent conduct of the parties.

It is elementary that the proper rule of construction of municipal ordinances is that they shall be strictly construed against the party claiming a grant. The language of the resolution is: "To occupy the streets, alleys, and public grounds within said city for the purpose of placing therein its poles, wires, and fixtures, constituting its telephone and telegraph line within and through said city." The record does not inform us whether the company, afterwards extended its long-distance line through the city, but in 1899 it only located its line within the city; that is, from the city limits to Third street. Strictly speaking, "its telephone line" refers to the line the company was at that time constructing through the country, viz., its long-distance telephone line. If, however, the language of the resolution is ambiguous, or susceptible of two constructions, one as contended for by appellant and the other by the city, then the subject should be considered in the light of the surrounding circumstances, in order to determine the intention of the parties.

The court takes judicial notice that in 1900 the population of Thief River Falls was one thousand eight hundred nineteen, which in 1905 had increased to three thousand five hundred two. Although it is alleged in the petition that appellant company conducted a long-distance telephone system, and that it had established more than twenty exchanges in various cities, and furnished telephone facilities to more than three hundred cities and villages, all connected, it is not alleged

and it does not appear that it was the purpose of appellant in 1899 to establish a local exchange in connection with its long-distance service in every city and village in which it established its long distance system. On the contrary, it is fairly to be inferred that such was not the settled purpose of the company. Therefore appellant was primarily engaged in the business of conducting a long-distance system in this and other states, and only established local exchanges in comparatively few instances. It was not the intention of the company to install a local telephone exchange in the city at the time it made application for the grant. It made no attempt to do so after the passage of the resolution of March 20, but, on the contrary, took the necessary steps to extend its long-distance system to the city, and made no demand upon the council to locate a route for a local exchange until the period of nearly seven years had transpired, and until the location of another system and the growth of the city made it apparent that it might be profitable.

So much for the attitude of appellant at that time, and now as to the city. If it was the purpose of appellant, as evidenced by its conduct, to establish at that time its long-distance system only, is it not reasonable to suppose that, in passing the resolution of March 20, the council legislated with reference to the long-distance system only? The language of the resolution is reasonably consistent with such intention, and it will not be presumed that the council intended to confer any greater powers than the language imports, when strictly construed. While the action of the council in locating the line by the resolution of August 21 was not inconsistent with an unlimited grant, such action was consistent with a limited grant; and unless it clearly appears from both resolutions, when considered in view of the surrounding circumstances, that the grant was unlimited, no presumption to that effect arises from the mere fact that express words of limitation were not employed.

In addition to what appears from the pleadings, it may be stated that it is a matter of common knowledge that the telephone business has always consisted of two well-defined branches—the long-distance system, and exchanges for the local business of cities and villages. Long-distance companies have often acquired local exchanges, and,

in the larger cities, operated them in connection with the toll system; but the words "telephone line" do not necessarily include local exchange lines. Appellant was engaged particularly in the long-distance telephone business. Presumably respondents treated with the company in that capacity, and the language of the grant does not require the construction which would indicate that as representatives of the municipality the members of the council were careless trustees and intended to tie the hands of the city for all time with reference to a very important franchise.

Affirmed.